IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OTTO "ED" ZINIKER,

                         Plaintiff,                              CV-06-1042-ST

        v.                                       OPINION AND ORDER

RAY WALDO,

                        Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Otto "Ed" Ziniker ("Ziniker"), was injured while assisting defendant, Ray Waldo ("Waldo"), his son-in-law, with replacing siding on Waldo's lakeside cabin on July 4, 2003. On July 1, 2005, just three days before expiration of Oregon's two year statute of limitations, Ziniker initially filed a Complaint in this court ("original action"), alleging that his injuries were caused by Waldo's negligence and/or gross negligence (docket # 1, Case No. CV-05-1032-BR). This court had diversity jurisdiction pursuant to 28 USC § 1332(a).

Ziniker filed a waiver of service signed by defense counsel on October 21, 2005, within 120 days of filing the complaint as allowed by FRCP 4(m).  However, in a diversity case, state law governs service.  *Torre v. Brickley*, 278 F3d 917, 919 (9th Cir 2002) (citation omitted).  Under ORS 12.020(1), an action is "commenced" for purposes of ORS 12.110(1) only when a plaintiff has both filed a complaint *and* served the defendant with a summons "before the expiration of 60 days after the date on which the complaint in the action was filed."  Because Ziniker served the summons on Waldo more than 60 days after the filing of the complaint, it did not relate back to July 1, 2005, and fell outside the two-year statute of limitations.  For that reason, Waldo filed a Motion for Summary Judgment to dismiss all of Ziniker's claims.  Judge Anna J. Brown granted that motion and dismissed the original action on the ground that it was not commenced under ORS 12.110(1) within two years of the accrual of his cause of action and, therefore, was barred by the statute of limitations.

Ziniker timely then filed the present action on July 21, 2006, under Oregon's Saving Statute, ORS 12.220, alleging the same claims against Waldo as in the original action, and again invoking diversity jurisdiction under 28 USC § 1332(a).

Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket # 32).

Waldo has filed a Motion for Summary Judgment (docket # 9) arguing that Ziniker's claims are barred by *res judicata* and claim preclusion or, in the alternative, that ORS 12.220 is not applicable to the facts of this case.[1]  For the reasons that follow, Waldo's Motion for Summary Judgment is denied.

_____

[1] Waldo has withdrawn his alternative argument that ORS 12.220, if applicable, would violate the Due Process Clause and/or the Separation of Powers Clause of the United States Constitution.

## LEGAL STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party."  *Id* (citation omitted).

///

///

## DISCUSSION

### I.    *Res Judicata*

In order to file the present action after the involuntary dismissal of his original action based on the statute of limitations, Ziniker relies on ORS 12.220 which provides in pertinent part as follows:

> (1)  Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action, or is involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims against the defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed.
> (2) If, pursuant to subsection (1) of this section, a new action is commenced in the manner provided by ORS 12.020 not later than 180 days after the judgment dismissing the original action is entered in the register of the court, the new action is not subject to dismissal by reason of not having been commenced with the time allowed by statute.

Despite this Saving Statute, Waldo argues that the present action is barred by *res judicata* or claim preclusion, which prohibits lawsuits on "any claims that were raised or could have been raised" in a prior action.  *Stewart v. U.S. Bancorp*, 297 F3d 953, 956 (9th Cir 2002) (citations omitted).  The preclusive effect of a prior judgment in a diversity action is determined by the law of the state in which the diversity court sits.  *Semtek, Int'l, Inc. v. Lockheed Martin Corp.,* 531 US 497, 508 (2001) (citations omitted).  Although Oregon courts have not decided whether to apply federal or state law to determine the preclusive effect of a judgment in a prior diversity action, the Ninth Circuit has assumed Oregon would apply federal law.  *Bates v. Union Oil Co.,* 944 F2d 647, 649 (9th Cir 1991), *cert denied,* 503 US 1005 (1992) (citations omitted).

Under federal law, the doctrine of *res judicata* applies when the earlier action (1) reached a final judgment on the merits; (2) involved the same claim; and (3) involved identical parties or

their privies.  *Leon v. IDX Sys. Corp.,* 464 F3d 951, 962 (9th Cir 2006) (citation omitted).  It is

undisputed that the parties (Ziniker and Waldo) and the claims (negligence) are the same here as

in the original action.  Thus, in order for *res judicata* to bar Ziniker's claim, the original action

must have reached a final judgment on the merits.

       Neither the Opinion and Order nor the Judgment in the original lawsuit specified whether

the dismissal was with or without prejudice or whether it was an adjudication upon the merits.

Oregon law deems a dismissal to be without prejudice if the judgment does not otherwise specify

(ORCP 54B(4)) and also considers a dismissal on statute of limitations grounds not to be an

adjudication on the merits.  *Newhouse v. Newhouse*, 271 Or 109, 112, 503 P2d 848, 849 (1975)

(citation omitted).  An adjudication not on the merits does not trigger a *res judicata* bar.

*Transamerica Ins. Group v. Adams*, 62 Or App 419, 426, 661 P2d 937, 941 (1983).  Therefore,

had the original action been filed in state court and involuntarily dismissed based on the statute

of limitation, it would be deemed to be without prejudice and not barred by the *res judicata*

doctrine.

       However, Ziniker chose to file his case in federal court.  Unlike Oregon law, FRCP 41(b)

provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under

this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of

jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an

adjudication upon the merits."  A judgment dismissing a claim pursuant to FRCP 41(b) and not

otherwise designated with or without prejudice is deemed to be with prejudice.  *Stewart*, 297 F3d

at 956.  Dismissal with prejudice is "shorthand for 'an adjudication upon the merits."  *Semtek*

*Int'l Inc.*, 531 US at 505.  Because FRCP 41(b) deems the judgment in the original action was an

adjudication on the merits and with prejudice, application of the doctrine of *res judicata* would bar this action.

However, the Oregon legislature adopted ORS 12.220 to save certain types of dismissed cases.  Of particular relevance here, it saves a case which has been "involuntarily dismissed *with prejudice* on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired."  The question presented in this case is whether ORS 12.220 trumps the *res judicata* effect of a judgment with prejudice in federal court.

Neither party has been able to identify any Ninth Circuit decision on point.  Several courts have held a dismissal on the merits by a federal court pursuant to FRCP 41(b) and the doctrine of *res judicata* bar the application of a state law saving statute.  *Aspacher v. Rosenthal Collins Group*, 2001 WL 930785 *3, n3 (ND Ill 2001) (federal court dismissal for failure to comply with discovery requests barred subsequent state court action), citing, among others, *Martin-Trigona v. Gouletas*, 433 NE2d 1132, 1134 (Ill App 1982) (federal court dismissal for failure to prosecute must be given *res judicata* effect in subsequent action in Illinois state courts); *cf. Aronson v. North Park College,* 94 Ill App3d 211, 215, 418 NE2d 776, 780 (1981), *appeal denied*, 119 Ill 553, 522 NE2d 1240 (1988).  Other state courts have held that a saving statute does not constitute an exception to the doctrine of *res judicata* for judgments of dismissal on the merits.  *Foster v. Bedell*, 136 NH 728, 730, 621 A2d 936, 937, *cert denied*, 510 US 844 (1993) (dismissal for failure to file pretrial statements was a judgment on the merits, precluding application of saving statute); *LaBarbera v. Batch*, 10 Ohio St 2d 106, 116, 227 NE 2d 55, 63

(1967) (dismissal of state court action based on statute of limitations barred second action based on *res judicata* despite saving statute).

However, at least one court has concluded that a state savings statute constitutes an exception to the doctrine of *res judicata*. In *Rocco v. Garrison*, 268 Conn 541, 551-53, 848 A2d 352, 359-60 (2004), plaintiffs filed a diversity action in federal court alleging injuries as a result of defendant's negligence. Because the statute of limitations expired before plaintiffs' counsel could effect formal service of process, the court granted defendant's summary judgment motion. Plaintiffs then commenced a new action in state court on the basis of Connecticut's saving statute, and defendant moved to dismiss the case invoking *res judicata* principles. The court held that a state saving statute was an exception to the doctrine of *res judicata* and, therefore, a subsequent state action under the saving statute was not barred by the previous federal court judgment which had failed to clarify whether it was with or without prejudice. It explained that the issues in the two actions are different:

> [T]he issue in the federal action was whether there had been effective service of process under the Federal Rules of Civil Procedure for the purpose of bringing that action prior to the expiration of the two year statute of limitations. In contrast, the issue in the present action is whether the federal action can be deemed to have been commenced, *despite* insufficient service of process, for the purpose of bringing a second action for the same cause under the savings statute. The defendant thus mischaracterizes the issue in the plaintiffs' second action and, therefore, cannot prevail under the doctrine of *res judicata*.

*Id* at 555-56, 848 A2d at 361.

Waldo attempts to distinguish *Rocco* by arguing that Ziniker had a full and fair opportunity to litigate his claim, but the claim was dismissed as barred by the statute of limitations. According to Waldo, allowing Ziniker to refile a claim dismissed as being barred by

the statute of limitations would negate the purpose of statutes of limitations. This court disagrees. Saving statutes do not eviscerate the purpose of statutes of limitations, but simply prolong the statutes of limitations in certain situations which the legislature thought were sufficiently compelling to allow for an exception.

Given the disagreement in the case law from other jurisdictions as to the *res judicata* effect of state saving statutes on federal court judgments,, this court turns to the language of ORS 12.220 and its legislative history. In interpreting a statute, courts shall "pursue the intention of the legislature if possible," and "when a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent." ORS 174.020(1)(a) & (2). Courts "may limit [their] consideration of legislative history to the information that the parties provide" and are entitled to assign the weight they consider appropriate to such legislative history. ORS 174.020(3).

In *Portland Gen. Elec. Co. v. Bureau of Labor and Indus.*, 317 Or 606, 859 P2d 1143 (1993), the Oregon Supreme Court laid out a framework for analyzing the intent behind a statute. At step one, the court must consider "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent," as well as "the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes." *Id*, 317 Or at 610-11, 859 P2d at 1146 (citations omitted). If, but only if, the legislature's intent is not clear from the text and context, the court proceeds to the second step, where it considers the statute's legislative history to discern the legislative intent. *Id,* 317 Or at 611-12, 859 P2d at 1146 (citations omitted). If the legislature's intent remains unclear, the court

may then "resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id*, 317 Or at 612, 859 P2d at 1146-47 (citations omitted).

The plain language of ORS 12.220 expressly applies to a "dismissal with prejudice" for failure "to properly effect service." By saving such actions, the statute operates as an exception to *res judicata.* To adopt Waldo's contrary interpretation would render Oregon's Saving Statute meaningless since its remedial purpose, like that of its Connecticut counterpart, is to "save those actions that have failed due to insufficient service of process." *Rocco*, 268 Conn at 550, 848 A2d at 358-59. Therefore, it should be read liberally. *See Roberts v. Gen. Motors Corp.*, 140 NH 723, 725, 673 A2d 779, 781 (1996) (the broad and liberal purpose of a statute of limitations saving statute is not to be "frittered away by any narrow construction") (citation omitted).

Furthermore, an examination of legislative history reveals that *res judicata* was considered by the drafters when amending ORS 12.220(1) in 2003 to add the language at issue here. The relevant amendments arose out of House Bill (HB) 2284. HB 2284 was drafted by the Saving Statute Work Group of the Oregon Law Commission, consisting of various Oregon attorneys and judges. The reporter for the Work Group, University of Oregon Professor Maury Holland, wrote that ORS 12.220 required amendment to cure two important defects:

> The first of these is its failure to state that its application is limited to situations where the original action is dismissed on a *procedural* as opposed to a *substantive* ground . . . In other words, ORS 12.220 in its present form seems applicable to cases where its application would be futile because the claims and defenses would be barred by *res judicata*. This anomaly might cause the provision occasionally to be overlooked in cases where its application would be appropriate.
>
> The second defect of the existing statute is that it cannot be applied where the original action is dismissed on the procedural ground most likely to be obviable in connection with a new action and sufficient alias service,

> namely, dismissal for insufficiency of service of the summons and
> complaint.
>
> \* \* \*
>
> ORS 12.220 has, of course, no application when adjudication of an action
> concludes with a judgment determining the merits of claims and defenses
> asserted therein since a subsequent action asserting the same claims and
> defenses would be barred by the doctrine of claim preclusion.  But, when
> claims are dismissed on such procedural grounds as . . . insufficient
> service of the summons and complaint, the filing of the dismissed action is
> often followed by the defendant's getting actual notice of it within the 60
> days allowed by ORS 12.020(2) by either sufficient or insufficient service
> or, on rare occasion, by some other means. In that event, it seems only fair
> to give claimants an opportunity to refile the action . . .  if the procedural
> defect which prompted that dismissal can be obviated and a second
> dismissal on that ground avoided.

Stone Aff, Exhibit G (Saving Statute Work Group Report (HB 2284)), pp. 3-4 (emphasis added).

Professor Holland repeated that intent when testifying on behalf of the Oregon Law

Commission before the Senate Committee on Judiciary:  "[I]f the dismissal, the original

dismissal is on a purely procedural ground which does not determine the merits, then this remedy

would come into play."  Stone Aff., Exhibit H, p. 4 (Senate Committee on Judiciary, May 12,

2003).  Staff Counsel Bill Joseph also summarized HB 2284 as a "savings bill" which would

apply only when the original action is "dismissed, usually for procedural reasons, in other words

a reason not on the merits."  Stone Aff., Exhibit I, p. 3 (Senate Committee on Judiciary, May 15,

2003).  Thus, the Oregon Legislature clearly intended to apply ORS 12.220 to cases dismissed

for purely procedural reasons and not decided on the merits.  It drew no distinction between state

court and federal court with respect to dismissals with prejudice for failure to properly effect

service in state court.

Thus, this court concludes that *res judicata* does not preclude application of ORS 12.220

to a judgment of dismissal with prejudice, whether obtained in state court or federal court, "on

the ground that the plaintiff failed to properly effect service within the time allowed by ORS

12.020 and the statute of limitations for the action expired." To do otherwise would evade the

underlying substantive state law in diversity cases in federal court which extends the state statute

of limitations in certain circumstances.

**II.    <u>Whether ORS 12.220 Saves This Action</u>**

Even if *res judicata* does not bar this action, Waldo argues that ORS 12.220 is not

applicable for two reasons. First, he draws a distinction between a dismissal with prejudice

based on the statute of limitations and based on failure to properly effect service of summons

within the time allowed by ORS 12.020. While Waldo correctly points out that Judge Brown

dismissed the original action with prejudice on the ground of being barred by the statute of

limitations, she clearly explained that the reason was Ziniker's failure to serve Waldo within 60

days of filing. Thus, under ORS 12.110(1), the action was not commenced on time. Any

attempt to differentiate between the two grounds would disregard the reason behind Judge

Brown's decision and elevate form over substance.

Second, Waldo argues that he never "had actual notice of the filing of the original action

not later than 60 days after the action was filed" as required by ORS 12.220. He asserts that this

language requires the defendant to receive notice of the action through attempted, but technically

insufficient, service within the 60 day period and excludes a situation, as in this case, where no

attempt is made to serve the defendant within the 60 day period. In other words, Waldo

distinguishes improper or insufficient service from no service at all.

The facts reveal that no attempt was made to serve Waldo or provide him with a copy of

the Summons and Complaint within the 60 day period. At some point after the accident, Waldo,

who is an independent insurance agent, submitted a claim to his insurer, Mutual of Enumclaw Insurance Company.  Waldo Depo, pp. 143-44.  By February 8, 2005, Marcene Trudell, a claims representative for the insurer in its office in Boise, Idaho, became involved to perform a coverage and liability analysis and conduct an investigation.  Dvorak Aff, Exhibit I.

Ziniker hired an attorney, Thomas Dvorak, who contacted Trudell on April 7, 2005, and dealt with her with respect to obtaining Ziniker's medical and treatment records.  *Id*.  Oregon's two year statute of limitations was due to expire by July 4, 2005.  Ziniker asked Dvorak to call Waldo prior to filing a complaint and explain that he was being sued and the action was being brought because Ziniker needed to do what he had to do to recover for his injury.  Dvorak Aff, ¶ 13.  After unsuccessfully trying to contact Waldo, Dvorak filed this lawsuit on July 1, 2005.  *Id* at ¶ 15 & Exhibit F.  One or two weeks later, he spoke to Waldo by telephone and informed him that he was his father-in-law's attorney and had filed a lawsuit for negligence on behalf of Ziniker in federal court in Oregon.  *Id* at ¶¶ 17-18.  He also advised Waldo that he was not going to serve the complaint for 120 days in order to discuss settlement with his insurer.  *Id* at ¶ 17.  While Waldo does not remember the exact details of that conversation, he admits that Dvorak "could have very easily said that."  Dvorak Aff, Exhibit D ("Waldo Depo"), pp. 158-59.

On July 13, 2005, Dvorak hand-delivered a letter to Trudell which stated that in order to preserve the statute of limitations, he had filed a complaint in federal court in Oregon, but was not yet serving it in the hope of working out a settlement within the 120 days allowed for service under the federal rules.  Dvorak Aff, Exhibit B.  That letter also described the nature and extent of Ziniker's injury and medical treatment and made a settlement offer.  The insurer's claims office in Boise received a copy of the Complaint that same day.  *Id*, Exhibit A, pp. 4-5.  On

July 20, 2005, Waldo and Trudell traveled to the property where the injury occurred to take pictures.  Waldo Depo, p. 100.  Waldo recalls Trudell telling him either the amount reserved on the claim or the amount of damages sought.  *Id* at 124-25.  He expected a lawsuit would be filed against him.  *Id* at 142.

On August 5, 2005, the insurer advised Waldo that the file in the matter was being referred to its attorneys (Brisbee & Stockton) and to another adjuster, but did not send a copy of the Complaint to Waldo.  Dvorak Aff, Exhibit A, p. 4.  On August 8, 2005, the insurer transferred the file to another adjuster.  Dvorak Aff, Exhibit E.  On August 11, 2005, William Stockton, an attorney for the insurer, "received a request to review the file and [Dvorak's] demand letter of July 13, 2005."  *Id*, Exhibit H.  On or about September 16, 2005, Waldo granted the insurer's request for its attorney to accept service on his behalf.  *Id*, Exhibit A, p. 3.  This was the first time Waldo recalls knowing that a lawsuit had been filed against him, as opposed to expecting one to be filed.  Waldo Depo, pp. 141-42.

Ziniker contends that the "actual notice" requirement of ORS 12.220 was satisfied through the telephone notice by his attorney to Waldo that a complaint had been filed and an inference that Waldo received notice of the lawsuit from his insurer.  Waldo responds that it is not sufficient to merely provide "word of mouth" notice that a lawsuit has been filed, but instead the defendant must at least be given a copy of the Complaint, as occurs when service is attempted but not perfected.  Waldo's interpretation is not supported by the language of the statute.

No Oregon appellate case has yet interpreted amended ORS 12.220.  However, the language of the statute clearly requires notice only of "the filing of the action."  It does not

require the defendant to be served with, or given a copy of, the Complaint or even to be notified

of the substance of the action. The only notice required is "actual notice" that the action has

been filed. "Actual notice" is not the same as "adequate notice" which is required to satisfy due

process. *Baker v. Foy*, 310 Or 221, 227, 797 P2d 349, 353-54 (1990) ("[A]ctual notice by itself

does not necessarily constitute adequate notice and adequate notice does not require actual

notice.").

This conclusion is bolstered by *Jordan v. Wiser*, 302 Or 50, 726 P2d 365 (1986), which

addressed "actual notice" in the context of ORCP 7G. In that case, the summons and complaint

were served on the defendant's mother. She then notified her son of the service by telephone

and also drove to her son's house and attempted to hand deliver them to him, but he refused to

accept them. The insurer also notified the defendant of the pendency of the action. The court

rejected plaintiff's claim that the defendant was personally served under ORCP 7D(2)(a) by his

mother because she was not authorized to serve the summons on the plaintiff's behalf.[2] The

court then addressed whether service would be validated under ORCP 7G based on the defendant

receiving "actual notice of the substance and pendency of the action." Although the defendant

never received a copy of the summons and complaint, the court found that the defendant had

received "actual notice" of the action from two sources: "his insurance company and the

telephone conversation with [his mother]." *Id*, 302 at 58, 726 P2d at 369. "Even if [the

defendant] had accepted and read the summons and complaint which [his mother] attempted to

deliver to him, the result would not change. Reading a summons received from an unauthorized

delivery would only increase [the defendant]'s actual notice." *Id*. However, it concluded that

---

[2] In *Baker*, 310 Or at 228, 797 P2d at 354, the Oregon Supreme Court disapproved "[t]hat portion of *Jordan* which can be read as holding that service by an unauthorized person is per se inadequate service."

"[a]ctual notice is not enough to trigger the application of ORCP 7G" because there was no service of summons. *Id*.

Applying that same reasoning here, Waldo could receive "actual notice of the filing of the action" through telephone notice from someone or notice from his insurer without receiving a copy of the complaint. This conclusion receives support from the legislative history. As noted above, Professor Holland wrote that amended ORS 12.220 was intended to apply to dismissals on such procedural grounds as "insufficient service of the summons and complaint" although the defendant received "actual notice of it within the 60 days allowed by ORS 12.020(2) by either sufficient or insufficient service *or, on rare occasions, by some other means*." Stone Aff., Exhibit G, p. 3 (Saving Statute Report (HB 2284)) (emphasis added). He did not elaborate on what he meant by "some other means," but he must have meant something different than "sufficient or insufficient service," including something other than receiving a copy of the Complaint.

The amendment to ORS 12.220 was specifically enacted to overrule *Baker*. In *Baker*, a process server delivered the summons and complaint to the defendant's mother, at an address the plaintiff's lawyer reasonably believed to belong to the defendant. The defendant did not actually live at that address, but his mother did, and she showed him the complaint within the requisite 60 day period. Nevertheless, the court dismissed the action for insufficiency of service. Professor Holland may well have been thinking of *Baker* when referring to insufficient service "even though the defendant actually received the papers within" the 60 days permitted by ORS 12.020(2), which "occurs most frequently in connection with substituted service, ORCP 7D(2)(b), and office service, ORCP 7D(2)(c). *Id* at 5. He repeated those examples in his

testimony.  Stone Aff., Exhibit H (Tape Recording, Senate Committee on Judiciary, HB 2284,

May 12, 2003, Tape 126, side A).  However, nothing indicates that he intended to preclude other

examples.  As presented to the Oregon Legislature, amended ORS 12.220 was designed to

eliminate "[c]ases such as *Baker* . . . because they involve situations where litigants, often having

meritorious, or at least triable, claims are deprived of their day in court because of procedural

mistakes by lawyers or servers against which they cannot protect themselves, even when those

mistakes do not appear to have been prejudicial to the rights of defendants."  Stone Aff, Exhibit

G, p. 5.  This description would include situations involving a procedural mistake by a lawyer

about whether the 60 or 120 day service rule applies, as in this case.

The focus is not whether service was attempted on Waldo or whether he received a copy

of the Complaint, but only whether he received "actual notice of the filing of the action" within

the 60 day period.  By using the word "actual," the type of notice required is different than mere

constructive or imputed notice.  For example, constructive notice could be imputed by virtue of

notice to a person with a sufficient identity of interest.  *See Schiavone v. Fortune*, 477 US 21

(1986) (endorsing the identity of interest method of imputing notice for FRCP 15(c)(3)).  Actual

notice instead requires that notice is given to the person who must be notified.

Waldo's insurer and defense counsel received notice of the filing of the action and a copy

of the Complaint within the 60 day period.  However, notice to them is not the same as notice to

Waldo.  Mailing a copy of the summons and complaint to an insurer is not notice of the

pendency of the action the insured.  *Gish v. Youngblood*, 161 Or App 591, 597, 984 P2d 931,

934, *rev denied*, 329 Or 527, 994 P2d 128 (1999) (citations omitted).[3]  Similarly, service on a

lawyer who has not yet been retained to represent the defendant is not adequate under ORCP 7.

*Edwards v. Edwards*, 310 Or 672, 681-82, 801 P2d 782, 787-80 (1990).  On the other hand,

Waldo would have received "actual notice" had either the insurer or the lawyer notified him that

the lawsuit had been filed.  Ziniker draws an inference that such notice was given to Waldo

based on fact that shortly after the lawsuit was filed, Turcell took Waldo to the property to take

photos.  However, it is just as reasonable to infer that taking photos was part of Turcell's

investigation of Waldo's insurance claim, as opposed to being prompted by the filing of the

lawsuit.

      The only evidence in the record about notice within the 60 day period given to Waldo, as

opposed to his insurer and the lawyer, is Dvorak's recollection of his July 2005 telephone call to

Waldo and Waldo's concession that Dvorak could easily have told him in that conversation that

the lawsuit had been filed.  Because this concession does not directly dispute Dvorak's positive

recollection, Ziniker contends that it must be taken as true.  *See Sandoval v. Hartford Cas. Ins.

Co.*, 653 SW 2d 604, 607 (Tex App 1983) ("Where the testimony of a witness, even an interested

one, is clear, direct, positive, and uncontradicted by any other witness or attendant

circumstances, it is to be taken as true as a matter of law") (citation omitted).

      However, Waldo also testified that he first learned of the filing of the action in September

2005 when he gave permission to have the papers delivered to Brisbee & Stockton, which was

well after the 60 day period expired.  Given that Dvorak recalls clearly telling Waldo that he had

filed the lawsuit, it appears that Waldo did not understand what Dvorak told him and was left

---

[3] For that statement, *Gish* cites to *Hoyt v. Paulos*, 310 Or 196, 203, 796 P2d 355 (1990), which holds only that mailing
to the insurer is required by ORCP 7D(4)(a), but is not jurisdictional.

with the impression that something further would happen in 120 days to actually begin the

litigation.  To the extent that service is required to commence an action that has been filed, such

an impression would be correct.  However, here the issue is not commencement of an action by

both filing and service, but only the filing of an action.  If the record presents a factual issue as to

what Dvorak said to Waldo, then an evidentiary hearing would be necessary to resolve it.

However, here the record is clear as to what Dvorak said to Waldo, which Waldo does not

dispute.  An evidentiary hearing would add nothing further.  Based on the record, this court

concludes that Dvorak told Waldo that the lawsuit had been filed, but that Waldo did not

understand what that meant and erroneously believed that the lawsuit would be coming, but had

not yet arrived.

Even though Waldo may have misunderstood what he was told by Dvorak, the fact

remains that Dvorak gave oral notice to Waldo of the filing of the lawsuit.  Had Dvorak sent

Waldo a letter stating that he had filed the lawsuit, Waldo could still have misunderstood what

Dvorak meant and still believed erroneously that filing of the lawsuit also required service of

some papers on him.  Such written notice would obviously satisfy the "actual notice"

requirement of ORS 12.220.  Therefore, the oral notice containing the same words also should

constitute "actual notice."

The Saving Statute speaks in terms of the defendant receiving "actual notice," rather than

the plaintiff giving "actual notice."  This could arguably be interpreted to mean that the plaintiff

bears the burden of ensuring that the defendant subjectively understands the meaning of the

notice received.  However, the point of the "actual notice" requirement is to allow the plaintiff to

overcome a procedural mistake without prejudicing the defendant.  Timely notice prevents

prejudice to a defendant by providing him with an opportunity to investigate the facts giving rise to the claim before they become stale.  Prejudice and notice are closely intertwined, as the amount of prejudice a defendant suffers is a direct effect of the type of notice he receives.  Once a defendant receives notice within the relevant time period, the issue is whether that notice was sufficient to allay any prejudice the defendant might have suffered.  Here, even if Waldo misunderstood what Dvorak meant about the filing of the lawsuit, he suffered no prejudice.  He not only expected the filing of a lawsuit, but his insurer was informed of the lawsuit, proceeded to investigate and retained an attorney to represent Waldo, all within 60 days after the lawsuit was filed.

The mistake in this case was procedural, due to a misunderstanding by Ziniker's lawyer of the applicable service rule, and does not prejudice the rights of Waldo whose insurer was timely informed of the lawsuit and prepared to defend him.  Under the totality of the circumstances presented, this court finds that Waldo "had actual notice of the filing of the original action not later than 60 days after the action was filed" as required by ORS 12.220.

## **ORDER**

Accordingly, Waldo's Motion for Summary Judgment (docket # 9) is DENIED.

DATED this 6th day of February, 2007.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge